**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KIRK CUNNINGHAM,

        Plaintiff,

v.

                                        CIVIL CASE NO. 06-10803
JO ANNE B. BARNHART,                        HON. MARIANNE O. BATTANI
Commissioner of Social Security,

        Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART**
**AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff Kirk Cunningham brings this action under 42 U.S.C. § 405(g) challenging a

final decision of defendant Commissioner denying his application for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 216(I) and 223 of

the Social Security Act.  Cunningham filed applications for benefits on August 26, 2002,

claiming that he became unable to work as of June 18, 2002, due to back pain, problems with his

hands and feet, and a head injury resulting in memory deficits.  Admin. R. 57-69, 78, 305-08.

He was 32 years of age when he filed the applications.  He has a general equivalence diploma

with a work history including employment as a factory worker, CNC machine operator, boat

laminator, salvage yard worker, construction worker, telemarketer, and grocery store clerk.

Admin. R. 80, 84, 98-104.

1

The Social Security Administration ("SSA") denied his claims initially, and upon reconsideration. Admin. R. 44-48, 50-53, 311-16. He then requested a hearing before an administrative law judge ("ALJ"). Admin. R. 54. The hearing was held on May 17, 2005, before ALJ Fred McGrath. Admin. R. 323-54. Cunningham, represented by counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert ("VE").

On August 12, 2005, the ALJ issued a decision denying his claim. Admin. R. 16-29. The ALJ determined that Cunningham had neurological deficits secondary to a closed head injury, dysthymia, bilateral hand weakness, type II diabetes mellitus, diverticulosis, hypertension, and obesity, and that his impairments were severe within the meaning of 20 C.F.R. §§ 404.1520, 416.920, but that he did not have an impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations. The ALJ further concluded that Cunningham was unable to perform any of his past work, but that he retained the capacity to perform light and sedentary work that existed in significant numbers in the regional and national economies. Accordingly, the ALJ found that Cunningham was not "disabled" within the meaning of the Social Security Act.

Cunningham filed a request for review of the ALJ's decision with the SSA's Appeals Council. Admin. R. 10. The Appeals Council denied the request on January 9, 2006. Admin. R. 6-8. The ALJ's decision thus became the final decision of the Commissioner. On February 22, 2006, Cunningham filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The case was referred to Magistrate Judge Virginia M. Morgan pursuant to 28 U.S.C. § 636(b)(1)(B). The parties filed cross-motions for summary judgment. The Magistrate Judge issued a Report and Recommendation ("R&R") on August 29, 2006, recommending that

Cunningham's motion for summary judgment be denied, and that the Commissioner's motion for summary judgment be granted.

The Magistrate Judge found that the ALJ reasonably resolved conflicts in the evidence regarding the extent of Cunningham's right hand impairment, and that the ALJ properly accounted for his cognitive deficits in the hypothetical posed to the VE.  Specifically, the Magistrate Judge found that the ALJ was correct to reject two examining physician's opinions regarding the extent of Cunningham's hand injury because the physicians were not a "treating source" within the meaning of the Social Security regulations, and because the medical record, as a whole, did not support their opinions.  The Magistrate Judge also found that there is no evidence in the record to substantiate Cunningham's claim that his cognitive impairments preclude him from working a normal, forty hour work week.  As a result, the Magistrate Judge found that the ALJ posed an accurate hypothetical question to the VE, which constituted the substantial evidence necessary to sustain the ALJ's disability determination.

On September 1, 2006, Cunningham filed Objections to the R&R, contending that the Magistrate Judge misinterpreted a physician's opinion to show that he could frequently finger and manipulate objects, and that his ability to perform housework, grocery shop, or drive is not necessarily indicative of an ability to perform work in a competitive work setting on a full time basis.  Cunningham also objects to the R&R's conclusions that he could perform well learned, simple tasks, and that he could perform simple, repetitive tasks because those findings were based on opinions that were outside of the expertise of the examining physicians.  As a result, Cunningham contends that the ALJ's hypothetical question was defective because it did not precisely set out all of his impairments and limitations.

3

## II.    STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district "court may accept, reject, or modify, in whole or in part, the findings or  recommendations made by the magistrate."  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate judge.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

Judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the ALJ's decision and whether the judge applied the correct legal standards in reaching that decision.  Elam v. Comm'r of Soc. Sec., 348 F.3d 124,125 (6th Cir. 2003), 42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If substantial evidence supports a denial of benefits, that decision is not subject to reversal, even if the reviewing court determines that substantial evidence supports a contrary decision.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "whatever in the record

4

fairly detracts from its weight." Mullen, 800 F.2d at 545 (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1971)).  However, the court may not review the evidence *de novo*, make determinations of credibility, or weigh the evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  Consequently, the substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts."  Mullen, 800 at 545 (citations and internal quotations omitted).

III.     STATEMENT OF FACTS

    A.     **Medical Evidence**

        1.     **Pre-Onset Date Medical History**

Cunningham was born on March 30, 1970.  Admin. R. 57.  He attended school to the 9th grade and  completed a GED.  Admin. R. 84, 342.  He was employed as a stock worker, hi-lo driver, sheet metal worker, machine operator, welder and construction laborer.  Admin. R. 79, 98, 134.  He was injured in a motorcycle accident in April 1990, during which he lost consciousness.  Admin. R. 148.  He was hospitalized from April 23, 1990 to May 25, 1990.  Admin. R. 148-172.  He suffered a closed head injury and injuries to his hands and arms which required several surgical procedures.  His disability is allegedly due to pain in the right hand, both thumbs, both feet and back, memory problems, left hand problems and residuals from a closed head injury.  He has had residual problems from the accident, and alleges that his condition worsened in the last few years.

In May 1990, Cunningham was referred for physical therapy and speech therapy, and had mild to moderate cognitive and memory deficits consistent with right frontal and parietal lobe

injuries; he exhibited decreased attention, euphoric affect, and superficial insight.  Admin. R.

135-48.  He also underwent a neuropsychological evaluation, which included intelligence testing

that indicated low average intellectual functioning.  Admin. R. 152.  In June 1991, after the plate

used to repair his finger fractured and revealed that his bones had never truly been joined, he was

treated with open reduction and bone grafting with internal fixation.  Admin. R. 197-98.

### 2.    Post-Onset Medical Evidence

In October 2002, Cunningham was treated by Dr. James Nichols, who noted

Cunningham's complaints of hand pain, balance problems, and memory loss.  Admin. R. 194.

Dr. Nichols's impression included arthritis.  Admin. R. 194.

In December 2002, Dr. Miguel Rivera performed a consultative neurological examination

on request by the state agency.  Admin. R. 231-33.  Dr. Rivera's impression was a closed head

injury with some neurological deficits involving moderate cognitive impairment, impaired

attention, and bilateral sensory and motor impairment.  Admin. R. 232.  Dr. Rivera opined that

Cunningham was able to sit, stand, walk, hear, speak, travel, perform light lifting and carrying,

and handle activities that required understanding and memory, social interaction, and adaptation.

Admin. R. 233.  Dr. Rivera found that there was some degree of impulsivity which impairs

attention and some degree of problem solving difficulty.  Admin. R. 232.  He also found that the

small joints of his hands demonstrated chronic deformities and pain with moderate swelling, and

that grip strength and fine manipulation were impaired on the right side.  Admin. R. 232.

Cunningham also underwent a consultative examination by psychologist Thomas

Guidera, Ph.D., in December 2002, at the state agency's request.  Admin. R. 234-35.  He

complained of long term depression, memory problems, and problems sleeping.  He had

6

occasional suicidal thoughts and, at times, was tearful.  He sometimes forgot where he was when driving.  Admin. R. 234.  Dr. Guidera diagnosed dementia due to closed head trauma, and dysthymia.  Admin. R. 234.  Dr. Guidera opined that Cunningham was moderately limited in his activities of daily living and in maintaining concentration, persistence, and pace.  Admin. R. 235. Dr. Guidera further opined that Cunningham had "serious" social functioning problems.  Admin. R. 235.  Dr. T. Guidera, Ph.D. confirmed that Cunningham had moderate limitations on activities of daily living, and on concentration, persistence, or pace.

In February 2003, state agency psychologist Rene Brown, PsyD., reviewed the medical evidence and opined that Cunningham had mild restriction in carrying out his activities of daily living and maintaining social functioning, and marked difficulties in maintaining concentration, persistence, and pace.  Admin. R. 254.  In July 2003, state agency psychologist Steven Wise, M.D., reviewed the medical evidence, and opined that Cunningham had moderate difficulties in the areas of social functioning and maintaining concentration, persistence, and pace.  Admin. R. 271-81.

In July and November 2003, Cunningham's medical records were reviewed by Drs. Stone and Puestow, respectively, and both of these state agency physicians opined that Cunningham could perform a range of light work.  Admin. R. 239, 263-64.  Dr. Stone opined that Cunningham could perform frequent fine manipulation with the right hand.  Admin. R. 239. Dr. Puestow opined that Cunningham would be limited to occasional use of the right hand in performing fine fingering or manipulation.  Admin. R. 264.

In January 2005, Dr. R. Scott Turner, a neurologist at the Cognitive Disorder Clinic, examined Cunningham and conducted neuropsychological testing.  He complained of right hand

7

pain and swelling.  His mother reported that her son was unable to hold a job recently due to his cognitive difficulties.  Admin. R. 290.  She also reported that he has poor concentration and memory, and poor control of his temper.  Admin. R. 291.  His right upper extremity was noted to be swollen and he had decreased mobility of both upper extremities.  Admin. R. 291.  He had difficulty with serial seven subtraction, and was able to recall only one object out of three after five minutes.  Admin. R. 291.  He performed poorly on a task of oral trails, with his speech halting at times with some decrease in fluency, but he was fine with respect to naming, comprehension, repetition, reading, and writing.  Admin. R. 291.

Testing revealed mild difficulties in memory, reasoning, and attention.  Admin. R. 290-93.  The tests also confirmed deficits in memory, attention, and executive functioning. Admin. R. 292.  Cunningham did not perform well at a task at continuous performance requiring sustained attention.  Admin. R. 292.  He also performed poorly at a task of delayed logical memory and had poor motor function.  Admin. R. 292.  His attention and effort waned in the afternoon.  Admin. R. 292.  The testing showed some impaired performance in motor skills, conceptual reasoning, and sustained attention, as well as memory for location and borderline performance in visual memory tests.  Admin. R. 292.  Dr. Turner observed that test scores from September 2004, when compared with those of 1990 shortly following the accident, were either stable or showed improvement.  Admin. R. 292.  Whereas Cunningham had a verbal IQ of 82 in 1990, he tested at 90 in 2004.  Admin. R. 292.  Dr. Turner recommended that Cunningham consider discussing a trial of antidepressant medication with his primary care physician, as he suspected that depression/anxiety was affecting Cunningham's condition.  Admin. R. 292.

8

In April 2005, Dr. Anthony DeSilva, an internist who had treated Cunningham for one month, opined that Cunningham could lift up to 10 pounds occasionally, but could not perform repetitive grasping, reaching, pushing, pulling, or fine manipulation.  Admin. R. 297-98.  Dr. DeSilva further opined that Cunningham had attention and memory problems and neuropsychological deficits.  Admin. R. 298.  Dr. DeSilva also noted that he was unable to use his hands/arms for repetitive grasping, reaching, pushing/pulling, or fine manipulation, and had limited repetitive use of the right hand.  Admin. R. 298.

## B.       Hearing Testimony

### 1.       Cunningham's Testimony

At the hearing, Cunningham testified that he was involved in a motorcycle accident in April 1990, resulting in a closed head injury and injuries to his hands and arms.  Admin. R. 327. Cunningham stated that he had problems with his hands due to thumb injuries from the accident, and that he had difficulty completing forms.  Admin. R. 329-30.  Cunningham also testified that he had memory loss, pain in his feet that limited him to walking two blocks at a time, and needed to use the bathroom every hour at minimum.  Admin. R. 330-31, 335-36.  According to his testimony, he lived independently in Florida for over three years, during which time he took care of all of his own personal care activities, grocery shopping, housework, and driving.  Admin. R. 343.  Cunningham later moved to Michigan to live with his mother and stepfather for insurance coverage reasons.  Admin. R. 344.

In October 2002, Cunningham reported in a Pain Questionnaire that he did not take pain medications and had no side effects from any medications.  Admin. R. 92.  He also stated that he had not received any other forms of treatment such as physical therapy or biofeedback, since

9

1993.  Admin. R. 92.  He reported that pain did not prevent him from performing most of his daily activities, which included cooking, handling personal care, doing laundry, shopping, and driving.  Admin. R. 92-93.  He claimed to have limited use of his thumbs and right hand, difficulty bending over, and being on his feet for more than four hours.  Admin. R. 92.  He also reported to an Agency claims representative that he worked part-time at Bealls Outlet store.  Admin. R. 124.  He stated that he drove to and from work, paid his own bills and maintained his banking account, shopped, cooked, and performed all daily functions on his own.  Admin. R. 124.

He reported on August 26, 2002, that he was not able to work due to problems with his hands, thumbs, and feet.  He had back pain, memory problems from a head injury and uncontrolled left hand movement.  Admin. R. 78.  He did not cook on the stove due to forgetfulness.  Admin. R. 94.  He had trouble finishing simple tasks such as washing dishes or cleaning his room, and difficulty comprehending both written and spoken instructions.  Admin. R. 97.  His friend reported that he was sidetracked easily, had a bad memory, and had problems with his hands.  Admin. R. 109.

In a March 10, 2003, form, he reported that his twitches were increasing, that his pain level was also increasing in his thumbs, hands and back, and that he was unable to take his arthritis medication due to elevated blood pressure.  Admin. R. 110-111.

### 2.    The Vocational Expert

Samuel Goldstein testified at the hearing after hearing Cunningham's testimony.  Admin. R. 350.  The ALJ posed a hypothetical question to the VE that assumed an individual of Cunningham's age, education, and vocational background, who could perform light work that

involved simple, routine, repetitive tasks, with no production-rate work, but instead, required

goal-oriented work.  Admin. R. 351.  The hypothetical question further assumed an individual

who could perform frequent (up to 2/3 of the day) gross and fine manipulation with the right

hand.  Admin. R. 351.  The VE identified a number of unskilled, light jobs that such an

individual could perform, such as packing (6,000-7,000 in the tri-county metropolitan Detroit

area), visual inspection (4,000-5,000), and taping (800-1000).  Admin. R. 351-52.

### C.      The ALJ's Decision

The ALJ found that the medical evidence indicated that Cunningham's neurological and

physical impairments were severe within the meaning of the Regulations, but not severe enough

to meet or medically equal, either singly or in combination, one of the impairments listed in the

Appendix to the Regulations.  Admin. R. 23.  He also found that Cunningham retained the RFC

to:

> . . . perform light work activity, and specifically can lift and/or carry 10 pounds of
> weight frequently and 20 pounds of weight occasionally; stand and/or walk for a
> total of 6 hours in an 8-hour workday; and perform pushing and pulling motions
> with the upper and lower extremities within the aforementioned weight
> restrictions.  The claimant is limited to performing simple, routine, unskilled work
> with repetitive tasks, no production rate pace work but rather goal-oriented work;
> and can perform frequent (up to two-thirds of the workday) gross and fine
> manipulation with the right, dominant hand.

Admin. R. 28.  His determination was based on the fact that he worked for most of the three

years after his alleged onset date, took care of his personal activities,[1] and that the recent medical

evidence did not support the claimed worsening of his mental or physical condition.  Admin. R.

25.  The decision was also based on the fact that the ALJ accorded Dr. DeSilva's, Cunningham's

---

[1] Specifically mentioned were his ability to perform housekeeping tasks, grocery shop, and drive.

11

treating physician, opinion regarding Cunningham's manipulative limitations little weight.  The ALJ found Dr. Silva's opinion on this matter was not well supported by medically acceptable clinical and laboratory diagnostic techniques, and were inconsistent with substantial evidence in the case record.  Admin. R. 25.

After determining Cunningham's RFC, the ALJ determined that Cunningham could not perform his past, relevant work.  Admin. R. 26.  However, the ALJ determined that, although Cunningham could not perform the full range of light work, he retained the RFC to perform a significant number of jobs in the national economy in the light work category.  Admin. R. 29. As a result, the ALJ found Cunningham to be not disabled.  Admin. R. 29.

## IV.    ANALYSIS

In order to establish a compensable disability under the Social Security Act, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).  The claimant bears the ultimate burden of establishing a disability within the meaning of the Social Security Act.  Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993).

Disability claims are evaluated through a five-step sequential process.  20 C.F.R. § 404.1520.  See also Kirk, 667 F.2d at 529.  The burden of proof to show a disability is on the claimant through the first four steps of the process.  If a claimant meets this burden, the fifth step shifts the burden to the Commissioner.  Preslar v. Sec'y of Health and Human Serv., 14 F.3d 1107, 1110 (6th Cir. 1994).  The first step of the process examines whether the claimant is

currently engaged in substantial gainful activity.  If the claimant is so engaged, he is not disabled under the guidelines.  The second step examines whether the claimant has a severe impairment which significantly limits her ability to perform work-related functions.  Id.  If a severe impairment is found, the third step requires comparison of the impairment to those impairments listed in Appendix I, 20 C.F.R. § 404, Subpt. P (1981), to determine if, on the medical evidence alone, the claimant is disabled.  Id.  If the claimant is not disabled under the third step, the fourth step requires a determination of whether the claimant can perform relevant past work.  If claimant cannot perform relevant past work, the fifth step shifts the burden to the Commissioner to establish that the claimant has transferable skills which enable him to perform other work in the national economy.  Id.

The ALJ rendered findings favorable to Cunningham at the first four steps of the disability determination process.  Thus, the question before the Court is whether he is disabled under step five of this analysis; that is, whether he retains the RFC to perform other work existing in significant numbers in the national economy.  The ALJ found that, although Cunningham did not possess the RFC to perform his past relevant work, he retained the RFC to perform a significant range of light work because his claimed level of limitation was not totally credible, his treating physician's opinion regarding his limitations was not supported by the medical evidence, that other examinations reveal that Cunningham retained the capacity to perform frequent gross and fine manipulation with his right hand, and that he retained the mental RFC to perform simple, routine, unskilled work with repetitive tasks with no production rate pace.

13

Cunningham first objects to the Magistrate Judge's finding that the ALJ's determination that he retains the ability to frequently perform gross and fine manipulation with his right hand. The Magistrate Judge found no error in the ALJ's assessment of Cunningham's ability to perform frequent gross and fine manipulation with his right hand.  The Magistrate Judge found that the ALJ reasonably weighed both the medical and non-medical evidence and determined that the record as a whole was more consistent with Dr. Stone's opinion, rather than the opinions of Drs. Puestow and DeSilva.  As support for his findings, the ALJ gave substantial weight to Dr. Rivera's findings because he was a treating source, and gave little weight to Dr. DeSilva's opinion because he was only an examining source, whose opinion the ALJ felt was not supported by the record evidence.  The ALJ adopted the opinions of Drs. Stone and Puestow to the extent that those opinions did not support Cunningham's claimed limitations.  Admin. R. 25.

Also as support for his determination regarding Cunningham's physical abilities, the ALJ cited Cunningham's ability to write and fill out forms, his ability to take care of his personal activities, such as housework, grocery shopping, and driving.  Admin. R. 25.  Based on his ability to undertake those tasks, which the ALJ found inherently required a significant amount of fine manipulation, the ALJ determined that Cunningham's claims regarding his limitations were only partially credible.  Admin. R. 25.  Finally, the ALJ cited an absence of objective medical signs and findings of deterioration of Cunningham's physical condition.  Admin. R. 25.  As a basis for supporting the ALJ's decision, the Magistrate Judge noted that, as none of the consultative physicians were treating sources as defined by the regulations, the ALJ was not required to accord special weight to any one doctor's opinion.  Admin. R. 25, see Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir.  2003).

As noted above, judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the ALJ's decision and whether the judge applied the correct legal standards in reaching that decision.  Elam, 348 F.3d at125, 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" Brainard, 889 F.2d at 681, and ". . . is more than a scintilla of evidence but less than a preponderance . . . ."  Kirk, 667 F.2d at 535.  Although the "substantial evidence" standard which this Court employs is deferential to the ALJ's findings, the reviewing court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight."  Mullen, 800 F.2d at 545.  Similarly, "[a] substantiality of evidence evaluation does not permit a selective reading of the record."  Davis v. Apfel, 133 F. Supp.2d 542, 547 (E.D. Mich. 2001). See also Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981) ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record"); Kent v. Schweiker, 710 F.2d 110, 114 (3rd Cir. 1983) ("Nor is evidence substantial if it is overwhelmed by other evidence . . . .").

The Court finds that the ALJ's determination that Cunningham possesses the ability to frequently perform fine manipulation with his right hand is not supported by substantial evidence.  Dr. Rivera's opinion, which the ALJ accorded great weight, did not proffer an opinion on how often Cunningham could perform fine manipulation with his right hand.  Rather, at the December 24, 2002, exam, Dr. Rivera noted that Cunningham's grip strength and fine manipulation were impaired on his right side.  Admin. R. 232.  Although Dr. Rivera opined that Cunningham retained the ability to do work-related activities such as sitting, standing, walking, hearing, speaking, traveling, and light lifting and carrying, he proffered no opinion on

15

Cunningham's ability to perform fine manipulation at any degree of frequency.  Admin. R. 233.

Therefore, Dr. Rivera's opinion cannot be used to support a finding that Cunningham retained

the ability to frequently perform fine manipulation with his right hand.

Likewise, the fact that Cunningham lived on his own, retained the ability to write and fill

out forms, albeit slowly and with pain,[2] and retained the ability to take care of his personal

activities, such as housework, grocery shopping, and driving, is not substantial evidence that

supports the ALJ's findings.  His ability to perform those tasks does not translate into evidence

that he could perform frequent, i.e., up to two-thirds of the workday, fine manipulation with his

right hand.

The ALJ also cited Cunningham's ability to conduct these activities and a lack of

objective medical evidence as bases to find Cunningham's claim that his physical conditioning

was not worsening.  "It is for the Secretary, not a reviewing court, to make credibility findings."

Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994).  However, when determining whether the

decision is supported by substantial evidence, the reviewing court must take into consideration

the entire record, including "whatever in the record fairly detracts from its weight."  Mullen, 800

F.2d at 545.  The ALJ's credibility determination is not supported by the medical evidence.  As

discussed above, his ability to perform those tasks does not translate into evidence that he could

frequently perform fine manipulation throughout most of the workday.  Therefore, his ability to

perform those tasks does not impede the credibility of his claim that his condition is worsening.

Moreover, to the contrary of the ALJ's finding, the objective medical evidence supports his

claim that his condition is worsening - Cunningham's fingering ability declined in each of the

---

[2] Admin. R. 25, 330.

16

three state exams.  Admin. R. 239, 266, 298.  Therefore, the ALJ's assertion that there are no medical signs or findings of deterioration of Cunningham's physical condition is contradicted by the examining doctors's opinions, and is not considered substantial evidence.

Finally, the ALJ's decision to adopt Dr. Puestow's opinion, excluding the finding that Cunningham could only occasionally perform fine manipulation with his right hand, is an improper, selective reading of the record not supported by objective medical evidence. Therefore, the Court finds that the ALJ erred in finding that Cunningham retained the RFC to frequently perform fine manipulation with his right hand.

Cunningham also objects to the Magistrate Judge's finding that the question the ALJ posed to the VE adequately accounted for his mental limitations.  He asserts that the opinions of Drs. Wise and Brown are not reliable because they were not qualified to give opinions on his ability to perform repetitive, simple tasks.  He also asserts that the hypothetical question posed to the VE did not precisely set out all of his impairments and limitations because the ALJ did not adequately account for his concentration and attention deficits in the hypothetical.  As a result, he argues that the ALJ could not properly rely upon the VE's testimony in determining that he was not disabled.

The Court adopts the thorough recitation of facts contained in the Magistrate Judge's R & R regarding Cunningham's psychological exams, but highlights the following specific portions of the record because of the nature of the objections.  Dr. Miguel Rivera, an ODD neurological consultant, concluded that Cunningham had a "[c]losed head injury with some residual neurological deficits involving moderate cognitive impairment, impaired attention, bilateral sensory and motor impairment."  Admin. R.. 232.  He opined that Cunningham had the ability

17

"to do work-related mental activities involving understanding and memory, social interaction and adaptation." Admin. R. 233.

Clinical psychologist Dr. Thomas F. Guidera, also a ODD consultant, examined Cunningham on December 31, 2002, and gave the following summary:

> Kirk Cunningham is a 32 year, 9 month old male who appears to have moderate limitations in regard to activities of every day living. Pace, persistence, effort, and focus for the every day working experience, likewise, carry moderate limitations. Serious limitations exist at this time in regard to social functions. It is believed at this time that Mr. Cunningham can manage his own monies.

Admin. R. 235.

In a Psychiatric Review Technique (PRT) form dated February 12, 2003, Dr. Rene Brown, a clinical psychologist, indicated that Cunningham was mildly restricted in his activities of daily living, that he had mild difficulties in maintaining social functioning, and that he had marked difficulties in maintaining concentration, persistence, or pace. Admin. R. 244-54. Dr. Brown also completed a Mental Residual Functional Capacity Assessment (MRFCA) form. She indicated in the form that Cunningham was markedly limited in the ability to understand, remember, and carry out detailed instructions. Admin. R. 258. Dr. Brown found that Cunningham was not significantly limited in the other functional areas listed on the form. In the narrative portion of the form, Dr. Brown stated that Cunningham was "definitely capable" of performing simple, repetitive tasks, that he would likely have marked difficulty performing complex tasks, and that he "would do best in a structured [and] routine environment." Admin. R. 260.

On July 3, 2003, Dr. Steven L. Wise, also a clinical psychologist, completed a second PRT form. Dr. Wise determined that Cunningham was mildly restricted in his activities of daily

18

living, that he had moderate difficulties in maintaining social functioning, and that he had

moderate difficulties in maintaining concentration, persistence, and pace. Admin. R. 281. Dr.

Wise concluded that Cunningham "requires some repetition but appears capable of well learned

simple tasks." Admin. R. 287.

Dr. R. Scott Turner, a neurologist, examined Cunningham on January 20, 2005. He

noted that neuropsychometric tests performed in September, 2004, "showed some impaired

performance in motor skills, conceptual reasoning, and sustained attention as well as memory for

location, and borderline performance in visual memory tests. He also had difficulties sustaining

effort throughout the testing." Admin. R. 292. Dr. Turner compared the test scores from the

2004 tests to the scores obtained in similar tests taken in 1990 following the motorcycle accident,

noting that Cunningham's subtest scores had either remained stable or had improved. Admin. R.

292. He characterized Cunningham's memory, reasoning, and attention deficits as "mild."

Admin. R. 292.

The ALJ determined that as a result of his head injury, Cunningham was "limited to

performing simple, routine, unskilled work with repetitive tasks, and no production rate pace

work but rather goal-oriented work." Admin. R. 24. The ALJ incorporated these limitations into

the hypothetical he posed to the VE at the administrative hearing.

Cunningham suggests that even if he could perform simple, repetitive tasks, his cognitive

impairments would preclude him from maintaining persistence and pace for a normal 40-hour

workweek. However, there is no evidence in the record to substantiate this allegation. Based

upon the opinions of Drs. Wise and Brown, the only doctors to render specific findings as to the

extent of Cunningham's functional limitations, the ALJ reasonably concluded that Cunningham

19

could perform simple, repetitive tasks, with the additional limitation of no production rate pace work. Likewise, Cunningham offers no basis for, nor argument in support of, his assertion that Drs. Brown's and Wise's opinions that Cunningham could perform well learned, simple, repetitive tasks were outside the purview of the doctors's expertise. Therefore, their opinions will not be rejected as evidence that supports the ALJ's decision.

Further, the ALJ's determination is supported by the findings of the examining physicians. Dr. Turner characterized Cunningham's memory, reasoning, and attention deficits as only "mild." Admin. R. 292. Dr. Guidera determined that Cunningham was only moderately limited in the areas of concentration and persistence. Admin. R. 235. Further, Dr. Rivera opined that Cunningham had the ability "to do work-related mental activities involving understanding and memory, social interaction and adaptation." Admin. R. 233.

Based on a review of the record evidence, the Court finds that substantial evidence exists in the record to support the ALJ's determination of Cunningham's cognitive RFC in light of his established cognitive limitations. As a result, the Court finds that the hypothetical question the ALJ posed to the VE accurately set out all of his cognitive impairments and limitations, and properly accounted for his concentration and attention deficits.

Finally, given the Court's finding that the ALJ did not properly determine Cunningham's physical RFC, the Court must determine whether Cunningham is entitled to an award of benefits, or if remand for further fact finding is appropriate. The ALJ did not pose a hypothetical question to the VE that included an inability to perform frequent fine manipulation. Moreover, given the evidence of the decline of his physical abilities, the record does not establish the date Cunningham would be eligible for benefits if there would be no gainful employment he could

20

perform.  Therefore, this case does not present a situation that is appropriate to remand for an award of benefits.  See Newkirk v. Shalala, 25 F.3d 316, 318 (6th Cir. 1994)(an award of benefits is proper when ". . . all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.").  As a result, the Court finds that remand is appropriate.

**IV.     CONCLUSION**

Accordingly, the Court **GRANTS** in part, and **DENIES** in part, Defendant's Motion for Summary Judgment and **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion for Summary Judgment.

The Court **REMANDS** this case for further fact-finding regarding Plaintiff's RFC consistent with this opinion.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATED: **December 6, 2006**

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK